IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


MASSACHUSETTS BAY INSURANCE            )
COMPANY, THE HANOVER AMERICAN          )
INSURANCE COMPANY, and                 )
THE HANOVER INSURANCE COMPANY,         )
                                       )
          Plaintiffs,                  )
                                       )
     v.                                )          1:20CV926
                                       )
IMPACT FULFILLMENT SERVICES,           )
LLC, and IFS HOLDINGS, LLC,            )
                                       )
          Defendants.                  )


### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

     This matter comes before the court on the Motion for
Judgment on the Pleadings, (Doc. 30), filed by Plaintiffs
Massachusetts Bay Insurance Company ("MBIC"), The Hanover
American Insurance Company ("Hanover American"), and The Hanover
Insurance Company ("Hanover") (collectively, "Plaintiffs").
Plaintiffs ask this court to enter judgment in their favor on
the issues of whether, under Defendants' general liability and
umbrella policies, Plaintiffs owe a duty to defend or indemnify
Defendants against a class action lawsuit brought by Defendants'
employees. (Id.) This motion is brought pursuant to Fed. R. Civ.
P. 12(c).

For the reasons that follow, this court finds that Plaintiffs' motion will be granted.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Defendants Impact Fulfillment Services, LLC ("Impact") and IFS Holdings, LLC ("IFS") are North Carolina limited liability companies. (Complaint ("Compl.") (Doc. 2) ¶¶ 6, 8.)[1] Impact purchased a commercial insurance policy from MBIC effective May 1, 2018 through August 1, 2019, with IFS named as an additional insured party. (Id. ¶ 13; Certified Policy Ending in 168900 ("MBIC Policy") (Doc. 2-1).) Impact also purchased a commercial insurance policy from Hanover American effective August 1, 2019 through August 1, 2020, with IFS named as an additional insured party. (Compl. (Doc. 2) ¶ 14; Certified Policy Ending in 168902 ("Hanover American Policy") (Doc. 2-2).) Hanover also issued Commercial Follow Form Excess and Umbrella Policies ("Umbrella Policies") to Impact with identical effective dates to the general insurance policies. (Compl. (Doc. 2) ¶ 15; Certified Policy Ending in 169600 ("First Umbrella Policy") (Doc. 2-3); Certified Policy Ending in 169602 ("Second

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-2-

Umbrella Policy") (Doc. 2-4).) IFS was also named as an additional insured party to the Umbrella Policies. (Id.)

The MBIC Policy and the Hanover American Policy (the "Insurance Policies") provide that Plaintiffs will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." (Compl. (Doc. 2) ¶ 16.) The Insurance Policies also contain several exclusions from coverage.

The Insurance Policies contain a "Recording And Distribution Of Material Or Information" exclusion that reads as follows:

This insurance does not apply to:

. . . .

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

-3-

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Id. ¶ 19.) The Umbrella Policies contain the same provision. (Id. ¶ 26.)

The Insurance Polices also contain an "Employment-Related Practices" exclusion that reads as follows:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

. . . .

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

-4-

> (3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Id. ¶ 18.) The Umbrella Policies contain the same provision. (Id. ¶ 25.)

Lastly, the Insurance Policies contain an "Access Or Disclosure Of Confidential Or Personal Information" exclusion that reads as follows:

> This insurance does not apply to:
>
> . . . .
>
> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.
>
> This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(Id. ¶ 20.) The Umbrella Policies contain the same provision. (Id. ¶ 27.)

While the Insurance Policies were in effect, Defendants used their employees' fingerprints as part of their payroll time-keeping procedures at one of Defendants' facilities in Illinois. (Compl. (Doc. 2) ¶ 29.) Defendants did not inform

-5-

their employees of the purpose, length of collection, or use of employees' biometrics, and the employees never consented to or waived the storage and use of their biometrics. (Id. ¶¶ 31-33.) The employees were unaware what Defendants did with their fingerprints. (Id. ¶ 34.)

On July 30, 2020, Bradley Taylor filed suit against Defendants in the Circuit Court of Madison County, Illinois. (See id. ¶ 28; Taylor Complaint (Doc. 2-5).) The Taylor Complaint alleges that Defendants violated the Illinois Biometric Information Privacy Act ("BIPA"). (Compl. (Doc. 2) ¶ 36.) The Taylor Complaint seeks both liquidated damages and injunctive relief. (Id.)

Defendants requested coverage from Plaintiffs for the Taylor Complaint. (Id. ¶ 37.) Plaintiffs contend they have no obligation to defend or indemnify Defendants from the Taylor Complaint. (Id.) Plaintiffs brought this instant action seeking a declaratory judgment that Plaintiffs owe no duty to defend or indemnify Plaintiffs. (Id.)

Defendants answered the Complaint. (Answer (Doc. 16).) Plaintiffs filed a Motion for Summary Judgment, (Doc. 18). After discussion and preliminary observations from Magistrate Judge Joi Peake, the parties agreed that the duty to defend claims should be presented to this court on a Motion for Judgment on

-6-

the Pleadings. (Minute Entry 02/04/2021.) Plaintiffs
subsequently requested their Motion for Summary Judgment be
terminated, moved for judgment on the pleadings, (Doc. 30), and
filed a brief in support of their motion. (Pls.' Mem. of Law in
Supp. of Mot. for J. on the Pleadings ("Pls.' Br.") (Doc. 31).)
Defendants responded in opposition. (Defs.' Resp. to Pls.' Mot.
for J. on the Pleadings ("Defs.' Resp.") (Doc. 32)), and
Plaintiffs replied, (Doc. 33).

## II.  <u>LEGAL FRAMEWORK</u>

### A.  <u>Standard of Review</u>

This court applies the same standard to a Rule 12(c) motion
for judgment on the pleadings as to a Rule 12(b)(6) motion to
dismiss. <u>Occupy Columbia v. Haley</u>, 738 F.3d 107, 115–16 (4th
Cir. 2013). This court assumes the truth of all factual
allegations in the complaint, draws all reasonable inferences in
favor of the plaintiff, and asks whether the complaint plausibly
states a claim for relief. <u>Id.</u> In other words, the plaintiff
must plead facts that "allow[] the court to draw the reasonable
inference that the defendant is liable" and demonstrate "more
than a sheer possibility that a defendant has acted unlawfully."
<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

When evaluating a Rule 12(c) motion, this court may
consider only the pleadings, any exhibits thereto that are

essential to the allegations, and matters of public record susceptible to judicial notice. See Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating that documents attached to the complaint may be considered "so long as they are integral to the complaint and authentic").

Plaintiffs and Defendants both seem to agree that North Carolina law governs the Insurance Policies. (Compare Pls.' Br. (Doc. 31) at 8 with Defs.' Resp. (Doc. 32) at 5; MBIC Policy (Doc. 2-1) at 22 ("North Carolina Advisory Notice to Policyholders").) This court will therefore apply North Carolina law in its analysis.

## B.    Interpreting Insurance Contracts

Under North Carolina law, "[t]he interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). An insurance policy is a contract, and courts should first consider the intention of the parties when interpreting insurance policies. Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co., 211 N.C. App. 252, 261, 712 S.E.2d 670, 677 (2011) (quoting Fidelity Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986)); see also Gaston

-8-

Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000). If the relevant language is clear, courts must use the plain meaning of the words to give effect to the parties' intent. Fidelity Bankers Life Ins., 318 N.C. at 380-81, 348 S.E.2d at 796. When words are not defined in the insurance policy, they are given their ordinary everyday meaning; if a word has multiple meanings "and if the context does not indicate clearly the one intended, [the words are] to be given the meaning most favorable to the policyholder . . . ." Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). But, a term is not ambiguous "simply because the parties contend for differing meanings to be given to the language"; rather, ambiguity arises only when each proffered interpretation is reasonable in context. Allstate Ins. Co. v. Runyon Chatterton, 135 N.C. App. 92, 94-95, 518 S.E.2d 814, 816 (1999).

Where policy language is ambiguous and "susceptible of two interpretations, of which one imposes liability upon the company and the other does not, the provision will be construed in favor of coverage . . . ." Williams v. Nationwide Mut. Ins. Co., 269 N.C. 235, 238, 152 S.E.2d 102, 105 (1967); see also Eatman Leasing, Inc. v. Empire Fire & Marine Ins. Co., 145 N.C. App. 278, 281, 550 S.E.2d 271, 273 (2001) (citing Williams, 269 N.C.

at 240, 152 S.E.2d at 107). Any coverage exclusions "are to be construed strictly so as to provide the coverage, which would otherwise be afforded by the policy." Wachovia Bank & Tr., 276 N.C. at 355, 172 S.E.2d at 522-23; see also Eatman Leasing, 145 N.C. App. at 281, 550 S.E.2d at 273 (citation omitted) ("[E]xclusions from liability are not favored, and are to be strictly construed against the insurer.").

### C. The Duty to Indemnify

Plaintiffs seek a declaration from this court that they have no duty to defend or indemnify Defendants under the general liability and umbrella insurance policies for a putative class action. (Pls.' Br. (Doc. 31) at 1.) This court finds that the issue of whether there is a duty to indemnify is not ripe for adjudication. "A claim is not ripe for adjudication if it rests upon contingent future events that . . . may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (citations and internal quotation marks omitted). When evaluating the ripeness of a claim, courts look at "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003). "The fitness considerations ask whether the issues are purely legal or require further factual development for resolution, while the

-10-

hardship inquiry addresses the difficulty the parties will face if the court does not weigh in." Landmark Am. Ins. Co. v. Rural Cmty. Hosps. of Am., LLC, No. 5:15-CV-390-BO, 2015 WL 12860287, at *1 (E.D.N.C. Dec. 22, 2015) (internal citations omitted) (citing Nat'l Park Hosp. Ass'n, 538 U.S. at 813 and Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 162 (1967)).

Courts have held that a duty to indemnify is generally resolved after the underlying lawsuit concludes. See, e.g., Trustgard Ins. Co. v. Collins, 942 F.3d 195, 200 (4th Cir. 2019) ("Thus, suits about the duty to indemnify — unlike the duty-to-defend suits — would ordinarily be advisory when the insured's liability remains undetermined."); Montgomery Mut. Ins. Co. v. Citadel Mgmt., LLC, No. 3:12-CV-00797-FDW, 2013 WL 6147778, at *6 (W.D.N.C. Nov. 22, 2013) (citing Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 7, 692 S.E.2d 605, 611 (2010)) ("While an insurer's duty to defend may be determined upon commencement of the underlying action, its duty to indemnify cannot be determined until the conclusion of the case if necessary facts remain in dispute."). And courts have reached different conclusions on the defense and indemnification questions in the same opinion early in cases. See Landmark Am. Ins., 2015 WL 12860287, at *2; Medline Indus., Inc. v. Ram Med., Inc., 892 F. Supp. 2d 957, 965–66 (N.D. Ill. 2012).

However, the Fourth Circuit, applying North Carolina law, held that, "because the [applicable] exclusion precludes coverage, [plaintiff insurance company] has no duty to defend or indemnify" the defendant. Hartford Cas. Ins. Co. v. Davis & Gelshenen, LLP, 801 F. App'x 915, 917 (4th Cir. 2020); see also Hartford Cas. Ins. Co. v. Ted A. Greve & Assocs., PA, 742 F. App'x 738, 741 (4th Cir. 2018) (holding that, because the underlying claims were not covered under the insurance policy at issue, the plaintiff insurance company had "no duty to defend or indemnify" the plaintiff); Van Laningham v. Allied Ins., No. 1:16CV948, 2020 WL 3470254, at *2 (M.D.N.C. June 25, 2020) ("[O]nce the court finds that there is no duty to defend, then it must also find that there is no duty to indemnify; if there is no coverage when the alleged facts are accepted as true, there certainly won't be coverage when those same facts become subject to dispute."); N.C. Farm Bureau Mut. Ins. Co. v. Phillips, 255 N.C. App. 758, 764, 805 S.E.2d 362, 366 (2017) ("Because the duty to defend may be broader than the duty to indemnify we address the duty to defend because if it fails, so too does the duty to indemnify.").

In other words, if this court assumes the facts in a complaint are true, and those facts fail to allege a duty to defend, this court may also reach the conclusion that there is

-12-

no duty to indemnify as well, based upon those facts.  But see Westfield Ins. Co. v. Nautilus Ins. Co., 154 F. Supp. 3d 259, p271-72 (M.D.N.C. 2016) ("It is well established that the duty to defend, though broader than the duty to indemnify, is a distinct duty. While the reasons that may negate an insurer's duty to defend may also negate an insurer's duty to indemnify, the duty to defend does not subsume the duty to indemnify." (internal citations omitted)); Erie Ins. Exch. v. Builders Mut. Ins. Co., 227 N.C. App. 238, 245, 742 S.E.2d 803, 810 (2013) (quoting Builders Mut. Ins. Co. v. Mitchell, 210 N.C. App. 657, 665, 709 S.E.2d 528, 534 (2011)) ("The duty to defend is broad and is independent of the duty to pay.").

Nonetheless, North Carolina law dictates that an insurer's duty to indemnify cannot be determined until the conclusion of the case if necessary facts remain in dispute. Harleysville Mut. Ins. Co., 364 N.C. at 7, 692 S.E.2d at 611; see also Peerless Ins. Co. v. Innovative Textiles, Inc., No. 1:19-CV-362, 2020 WL 137303, at *2 (M.D.N.C. Jan. 13, 2020) (declining to hear the plaintiff's duty to indemnify claim because the plaintiff had not yet been found liable in the underlying lawsuit).

Here, there have been no allegations (or evidence showing) that the Taylor Complaint is resolved. Because it appears the Taylor Complaint is still pending, this court will stay ruling

-13-

on the duty to indemnify claim. See Hanover Ins. Co. v. Blue Ridge Prop. Mgmt., LLC, 490 F. Supp. 3d 904, 914-16 (M.D.N.C. 2020) (staying the insurer's duty to indemnify claim until the underlying action was resolved); Westfield Ins. Co. v. Weaver Cooke Constr., LLC, No. 4:15-CV-169-BR, 2017 WL 818260, at *3 (E.D.N.C. Mar. 1, 2017) (same).

### D. **The Duty to Defend**

Under North Carolina law, an insurer's duty to defend "is broader than its obligation to pay damages incurred by events covered by a particular policy. Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986) ("An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial.").

North Carolina uses the comparison test to determine whether an insurer has a duty to defend: "the pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." Id. at 693, 340 S.E.2d at 378. There will be no duty to defend only when the factual allegations "are not even arguably covered by the policy." Id. at 692, 340 S.E.2d at 378.

-14-

## III.  **ANALYSIS**

Plaintiffs argue there are four reasons why they do not have a duty to defend Defendants in the Taylor Complaint: (1) the scope of the policy does not cover the allegations in the Taylor Complaint; (2) the Recording and Distribution of Material or Information Exclusion applies; (3) the Employment-Related Practices Exclusion applies; and (4) the Access or Disclosure of Confidential or Personal Information and Data-Related Liability Exclusion applies. (Pls.' Br. (Doc. 31) at 2.) Because this court finds, for reasons discussed <u>infra</u>, that the Recording and Distribution of Material or Information Exclusion applies, this court will address that exclusion first.

### A.  **Recording and Distribution of Material or Information Exclusion**

Plaintiffs argue the Recording and Distribution of Material or Information Exclusion applies because BIPA is analogous to the statutes enumerated in the exclusion. (<u>Id.</u> at 12-14.) Defendants argue this exclusion does not apply to violations of BIPA. (Defs.' Resp. (Doc. 32) at 12.)

The Recording and Distribution of Material or Information Exclusion applies to alleged violations of statutes which limit the "printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." (Compl. (Doc. 2) ¶ 19.) Another federal

-15-

district court, applying North Carolina law, interpreted a similar exclusion to deny coverage for an alleged violation of a federal privacy law. Hartford Cas. Ins. Co. v. Greve, No. 3:17CV183-GCM, 2017 WL 5557669, at *4 (W.D.N.C. Nov. 17, 2017). In Greve, the underlying complaint alleged violations of the Driver's Privacy Protection Act ("DPPA"), and the insurance policy had an exclusion with similar language to the exclusion in this case. Id. at *2 (noting the relevant exclusion applied to "[a]ny statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information"). The DPPA limits the distribution of personal information from a motor vehicle record. 18 U.S.C. § 2722. The court in Greve found that "[a] plain language construction of this exclusion reveals that there is no coverage under the Policies when personal or advertising injury arises from the alleged violation a statute that limits the communication or distribution of material or information." Greve, 2017 WL 5557669, at *4. Despite the fact that the DPPA governs personal information in a motor vehicle record, while the TCPA and CAN-SPAM – the enumerated statutes in the exclusion – govern a person's phone and e-mail information, the court in Greve found the exclusion applied. Id.

Additionally, an exclusion with identical language to the exclusion in this case has been interpreted to exclude coverage for an underlying complaint alleging violations of the Song-Beverly Credit Card Act. OneBeacon Am. Ins. Co. v. Urb. Outfitters, Inc., 21 F. Supp. 3d 426, 440 (E.D. Pa. 2014). The Song-Beverly Credit Card Act's purpose is to "promote the lawful use of credit cards and deter conduct that would put consumers' privacy at risk." In re Payless Shoesource, Inc., Nos. 09-MD-2022, 08-CV-2672, 09-CV-1040, 2009 WL 3233820, at *3 (E.D. Cal. Sept. 11, 2009). In Urban Outfitters, the federal district court considered whether a violation of the statute fell within the "Distribution of Material in Violation of Statutes Exclusion." Urban Outfitters, 21 F. Supp. 3d at 438. The underlying complaint alleged the insured collected personally identifiable information from people and used that information unlawfully. Id. at 437. The court in Urban Outfitters found the exclusion applied because "the language of the exclusion . . . is consonant with the [statute's] prohibition against requesting, requiring[,] or recording [personal information] as a condition of purchase." Id. at 440.

Under the interpretive principle of ejusdem generis, general, catch-all language that directly follows a list of specific items is construed to include "only things of the same

-17-

kind, character and nature as those specifically enumerated."
N.C. Ins. Guar. Ass'n v. Century Indem. Co., 115 N.C. App. 175,
191, 444 S.E.2d 464, 473-74 (1994) (quoting State v. Lee, 277
N.C. 242, 244, 176 S.E.2d 772, 774 (1970)). Here, the exclusion
contains catch-all language – "[a]ny federal, state or locate
statute" – following the list of specifically enumerated
statutes: the TCPA, the CAN-SPAM, and the FCRA/FACTA. (Compl.
(Doc. 2) ¶ 19.) Applying ejusdem generis, the exclusion applies
to statutes "of the same kind, character and nature" as the
TCPA, the CAN-SPAM, and the FCRA/FACTA. N.C. Ins. Guar. Ass'n,
115 N.C. App. at 191, 444 S.E.2d at 473-74.

Here, alleged violations of BIPA come directly within the
scope of the Recording and Distribution of Material or
Information Exclusion. This exclusion, like the exclusions in
Greve and Urban Outfitters, applies to any statute that
prohibits or limits "the printing, dissemination, disposal,
collecting, recording, sending, transmitting, communicating or
distribution of material or information." (Compl. (Doc. 2)
¶ 19.) BIPA regulates the retention, collection, disclosure, and
destruction of biometric identifiers or biometric information.
740 Ill. Comp. Stat. 14/15. The language of the exclusion in
this case, which bars the "collect[ion]" and "dissemination" of
information, is consonant with BIPA's prohibition against

-18-

collection and disclosure of biometric identifiers and biometric information.

Additionally, this court finds that BIPA is of the same kind, character and nature as the enumerated statutes. Defendants argue BIPA is not like the FCRA because the FCRA protects consumers from improper distribution of financial information. (Defs.' Resp. (Doc. 32) at 13.) Although coverage exclusions "are to be construed strictly," Wachovia Bank & Tr., 276 N.C. at 355, 172 S.E.2d at 522-23, this court does not find precedent for reading this exclusion as narrowly as Defendants do.[2] The exclusion here includes the FCRA and the FACTA as enumerated statutes, in addition to the TCPA and CAN-SPAM. (Compl. (Doc. 2) ¶ 19.) Contrary to Defendant's assertion the

---

[2] Defendants argue that West Bend Mutual Insurance Company v. Krishna Schaumburg Tan, Inc. supports this court finding the Recording and Distribution of Material or Information Exclusion does not apply. (Defs.' Resp. (Doc. 32) at 12 (citing W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc., 2020 IL App (1st) 191834, 166 N.E.3d 818 (Ill. App. Ct. 2020).) Since Defendants filed their brief, West Bend has been appealed to the Illinois Supreme Court. W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc., 2021 IL 125978, ____ N.E.3d ____ (Ill. May 20, 2021). The Illinois Supreme Court affirmed the Illinois Court of Appeals and held that the "violation of statutes" exclusion did not apply, and therefore the insurance company had a duty to defend. Id. ¶¶ 58-60. But West Bend involved a different exclusion than the one at issue here. That exclusion was similar to the exclusion in Greve to the extent it listed only the TCPA and CAN-SPAM. However, to the extent Greve and West Bend are contradictory, this court resolves all contradictions in favor of Greve, since Greve was interpreting and applying North Carolina law rather than Illinois law.

TCPA is intended to regulate unwanted telephone communications, (Defs.' Resp. (Doc. 32) at 13), case law reflects the TCPA is more broadly intended to protect privacy. Am. Ass'n of Pol. Consultants, Inc. v. Fed. Commc'ns Comm'n, 923 F.3d 159, 168 (4th Cir. 2019), aff'd sub nom. Barr v. Am. Ass'n of Pol. Consultants, Inc., ___ U.S. ____, 140 S. Ct. 2335 (2020) (citing S. Rep. No. 102-178, at 1 (1991) (noting the purpose of the TCPA is "to protect the privacy interests of residential telephone subscribers")). Further, one of the main purposes of the FCRA is also to "protect consumer privacy." Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 346 (4th Cir. 2017) (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007)). The courts in Greve and Urban Outfitters found this exclusion applied to a statute governing drivers' personal information and to a statute governing credit card users' personal information. Greve, 2017 WL 5557669, at *4; Urban Outfitters, 21 F. Supp. 3d at 440. This indicates the main purpose of this exclusion is to exclude from coverage statutes that protect and govern privacy interests in personal information. Like those statutes, BIPA protects and governs a person's privacy interest in their biometric information. 740 Ill. Comp. Stat. 14/15. Applying the principles of ejusdem generis, because BIPA is of the same kind, character and nature as the listed statutes, this court finds that the

Recording and Distribution of Material or Information Exclusion applies. Therefore, the Taylor Complaint is excluded from coverage under Defendants' Insurance Policies.

Because the claims in the Taylor Complaint are for violations of BIPA, which are excluded from coverage under the Insurance Policies, this court finds that Plaintiffs have no duty to defend Defendants against the Taylor Complaint. Therefore, this court will grant Plaintiffs' Motion for Judgment on the Pleadings.

## IV. CONCLUSION

For the foregoing reasons, this court finds that Plaintiffs' Motion for Judgment on the Pleadings should be granted.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Judgment on the Pleadings, (Doc. 30), is **GRANTED** and that this case is **DISMISSED.**

A judgment consistent with this Memorandum Opinion and Order will be contemporaneously herewith.

This the 24th day of September, 2021.

_____
United States District Judge